```
                   UNITED STATES DISTRICT COURT
                           FOR THE
                      DISTRICT OF VERMONT


Anthony Lapinsky, M.D.,        :
      Plaintiff,               :
                               :
      v.                       :     File No. 1:05-CV-34
                               :
Copley Hospital, Inc.,         :
Mark D. Lichtenstein, M.D.,    :
and S. Glen Neale, M.D.,       :
      Defendants.              :
```

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
(Paper 104)

Defendant S. Glen Neale, M.D. seeks to dismiss Count III of the Second Amended Complaint ("SAC"), which alleges that he defamed Dr. Lapinsky.  Dr. Neale brings this motion pursuant to Federal Rule of Civil Procedure 12(b)(6) or, alternatively, seeks to convert his motion into a motion for summary judgment, pursuant to Fed. R. Civ. P. 12(b).  Dr. Neale contends that the defamation claim is barred by the expiration of the statute of limitations and laches.

A hearing was held on August 9, 2007.  For the following reasons, this Court finds that based on the deposition of Dr. Lapinsky and other material in the record the defamation claim is time-barred.  I recommend that Dr. Neale's motion be **GRANTED**.

1

## Background

Dr. Neale is an orthopedic surgeon and current employee of Copley Hospital. (Paper 98, SAC, ¶ 6). Beginning in the early 1990s until more recently, Dr. Neale had a private orthopedics practice with admitting privileges at the Copley Hospital. (Id. at ¶ 9). Between 1998 and 2000, Dr. Neale and Dr. Lapinsky were colleagues on the medical staff at Copley Hospital and were the only orthopedic surgeons admitting patients to the hospital. (Id.).

In January or February 1999, Dr. Baska, then chief of surgery at Copley Hospital, told Dr. Lapinsky that Dr. Neale was "defaming" him to other physicians in the Vermont medical community. (Paper 104-3, Lapinsky Depo. at 47; Paper 98, ¶ 12). Dr. Lapinsky also learned from his own patients that Dr. Neale had made negative comments about him to them. (Lapinsky Depo. at 45-47). In early 1999, an orthopedic equipment representative told Dr. Lapinsky that he had heard about the derogatory information from residents at Fletcher Allen Health Care, Inc., and from a co-worker whose veterinarian was a patient of Dr. Neale. These accounts prompted Dr. Lapinsky in May 1999 to tell Dr. Blowers, Copley Hospital's medical director, that Dr. Neale was

defaming him.  (Paper 98, SAC, ¶ 17).  Dr. Lapinsky sought Dr. Blowers guidance and intercession on the issue.  Dr. Blowers memorialized his meeting with Dr. Lapinsky noting that Dr. Lapinsky was considering legal action because "[h]e feels this is slander and will negatively affect his practice." (Paper 106-4, Blowers Memorandum).  On June 17, 1999, Dr. Lapinsky wrote identical letters to Dr. Blowers and Copley Hospital President, Carolyn Roberts, stating that "[i]t is with great concern that I write to you on this matter.  I believe that false and malicious accusations have been made against me." (Paper 104-5, 104-5).

In January 2000, Dr. Lapinsky decided to leave Copley Hospital due to, in part, the defamation that he had experienced there. (Paper 104-3, Lapinsky Depo. at 125).  He stated that he "was the victim of defamation by him [Dr. Neale] as documented by Dr. Blowers and told to me by Dr. Baska."  (Id. at 109-110).  Despite considering legal action, Dr. Lapinsky opted not to pursue it and instead left Copley Hospital in approximately June 2000. (Id. at 110).  Specifically, Dr. Neale stated:

> Q. [A]re there any other defamatory remarks that
>    you believe were made by Dr. – Dr. Neale; that is,

>  remarks that you consider to be defamatory?
>
>  A. I know of no specific defamatory comments, but the fact that there are more surgeons and more physicians than statements I'm aware of, and I believe that this is a behavior of Dr. Neale's to defame people based on my discussions with Dr. Jennings, who experienced these same negative comments about his practice while he was here with Dr. Neale, I believe the ones I know about are the tip of the iceberg and that there are likely many other instances, and it would take polling every other physician in Lamoille County and the catchment in Chittenden County to find out if Dr. Neale said anything bad about me to them or anything they would consider defamatory, but I chose not to pursue that, and I believe that the evidence that exists is enough to say that it did occur.

Id. at 69.

Dr. Lapinsky filed a lawsuit against Copley Hospital and Dr. Lichtenstein on February 8, 2005. On September 26, 2006, in a supplemental interrogatory response from Copley Hospital, Dr. Lapinsky learned the identities of 15 doctors to whom Dr. Neale allegedly made defamatory remarks about him. One of them was Dr. Blowers, whose identity was known to Dr. Lapinsky in 1999. In February 2007, Dr. Lapinsky filed the SAC to add Dr. Neale as a defendant, approximately eight years after Dr. Baska first told him that Dr. Neale was defaming him to physicians in the community. Count I of the SAC alleges defamation against Dr. Neale. (Paper 98, ¶¶

48-58).  Counts II and III charge Copley Hospital and Dr. Lichtenstein with defamation and tortious interference with prospective contractual relations. (Id. at ¶¶ 59-89).

On April 3, 2007, Dr. Neale filed an unopposed motion for enlargment of time to answer or otherwise respond to the SAC. (Paper 101).  On April 23, 2007, Dr. Neale filed this Rule 12(b)(6) motion to dismiss the complaint. On May 17, 2007, Dr. Lapinsky filed an unopposed motion for enlargment of time to oppose Dr. Neale's motion to dismiss, (Paper 109), and on June 13, 2007, filed his opposition. (Paper 116).  Dr. Neale submitted evidence outside the pleadings with his motion to dismiss, requesting that it be treated as a summary judgment motion. Fed R. Civ. P. 12(b).  Dr. Lapinsky's opposition did not include any extrinsic evidence.

DISCUSSION

I. Conversion of Motion to Summary Judgment

Rule 12(b) of the Federal Rules of Civil Procedure provides that where "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56."  The Second Circuit instructs that

"conversion of a Rule 12(b)(6) motion into one of summary judgment is governed by the principles of substance rather than form."  In re G & A Books, Inc. v. Stern, 770 F.2d 288, 295 (2d Cir. 1985).  The "essential inquiry is whether the appellant should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings."  Id.; see Marvin v. Albstein, 386 F. Supp. 2d 247, 251 (S.D.N.Y. 2005); Capital Records, Inc. v. Naxos of America, Inc., 262 F. Supp. 2d 204, 207 (S.D.N.Y. 2003).  While conversion of a motion to dismiss into a summary judgment motion necessarily depends on the facts and circumstances, even where only one party submitted extrinsic evidence, "the opposing party may be deemed to have had adequate notice that the motion to dismiss would be converted."  In re G & A Books, 770 F.2d at 295; Cook v. Hirschberg, 258 F.2d 56, 57-58 (2d Cir. 1958) (finding that defendant's filing of affidavits with motion to dismiss both converted it into a motion for summary judgment and put plaintiffs on notice of their obligation to disclose the merits of their case).

   Dr. Lapinsky argues that it is too early for the Court

to convert Neal's motion to dismiss into a summary judgment. Although the Court finds that Dr. Lapinsky has not been taken by surprise or deprived of an opportunity to meet facts outside of the pleadings in this case,[1] dismissal is appropriate because the undisputed facts taken from Dr. Lapinsky's deposition demonstrate that the claim is time-barred.

II.  Statute of Limitations

The parties agree that the statute of limitations for a defamation claim is three years from the point at which the claim accrues.  12 V.S.A. § 512(3).  They also agree that the accrual date "may be deferred until the plaintiff discovers or, through the exercise of reasonable care and diligence, should have discovered the nature of the defamatory communication."  <u>Dulude v. Fletcher Allen Health Care, Inc.</u>, 174 Vt. 74, 85 (2002) (holding discovery rule applies to Vermont defamation claims).  They disagree about when Dr. Lapinsky discovered facts constituting the basis for a claim of defamation, or whether sufficient facts existed in 1999 to put him on inquiry notice, which if

---

[1] Dr. Lapinsky had notice as of April 23, 2007 that Dr. Neale sought to convert his motion to dismiss into a motion for summary judgment. Nevertheless, Dr. Lapinsky chose not to submit additional evidence when he responded in June 2007.

pursued, would have led to discovery of facts upon which to base his claim.  Agency of Natural Resources v. Towns, 168 Vt. 449, 452 (1998) (stating discovery rule standard for claim accrual).  Dr. Lapinsky argues that the limitations period on his claim against Dr. Neale did not begin until he discovered in September 2006 the identities of 15 doctors to whom Dr. Neale defamed him.  Relying on this Court's decision in Decker v. Vermont Educational Television, Inc., 13 F. Supp. 2d 569 (D. Vt. 1998), Dr. Lapinsky contends that knowledge of the specific recipients of a defendant's defamatory statements is an essential element of a defamation claim and, therefore, had he filed his claim at any time before October 2006, it would have been dismissed.  At oral argument Dr. Lapinsky conceded that his claim is time-barred if knowledge of the specific recipients of the defamation is not an essential element of the claim.  For the following reasons, Dr. Lapinsky's reliance on Decker under these circumstances is misplaced.

   The issue in Decker was whether the plaintiff stated a claim under Federal Rule of Civil Procedure 8(c).  Decker, 13 F. Supp. 2d at 573.  The Decker court held that the amended complaint failed to provide the defendant with

"sufficient notice of the communications complained of to enable [Defendants] to defend themselves" because it contained conclusory accusations and failed "to identify even generally the communications, or to whom they were communicated." Id. at 573-74.  Although failure to identify the defamation recipients contributed to the complaint's factual deficiency, it was not singularly fatal to the sufficiency of the complaint.  Id. at 574 (listing no basis in facts for defamation claim, little more than conclusory accusations, failure to identify communications generally or to whom they were communicated).  Moreover, the Decker court did not find that the identity of defamation recipients was an essential element of a defamation claim.  On the contrary, the court identified the elements of defamation in Vermont as:

> (1) a false and defamatory statement concerning another; (2) some negligence, or greater fault in publishing the statement;  (3) publication of statement to at least one third person; (4) lack of privilege in the publication; (5) special damages; and (6) some actual harm so as to warrant compensatory

Id. (quoting Crump v. P & C Food Markets, Inc., 154 Vt. 284, 291 (1990)).

Here, Dr. Neale does not challenge the sufficiency of the SAC but rather whether Dr. Lapinsky's defamation claim

9

is time-barred.  That issue was not before the <u>Decker</u> court. In <u>Dulude</u>, however, the Vermont Supreme Court resolved the question of when a Vermont defamation claim accrues. 174 Vt. At 84-85.  In <u>Dulude</u>, the plaintiff-nurse alleged that her supervisor at FAHC first defamed her in 1992 and then the defamation was republished by another nurse in 1994.  174 Vt. at 85.  She filed her defamation claim on April 17, 1998.  <u>Id.</u>  The Vermont Supreme Court held that her claim was time-barred because she was "admittedly aware of the alleged defamatory statements made in 1992 more than three years before she filed this present action."  <u>Id.</u>  The supreme court rejected Dulude's argument that it was reasonable for her not to have discovered because FAHC had erected an "intervening screen" to hide its wrongdoing. <u>Id.</u> at 86.  The court reasoned that FAHC had not taken any steps to hide any report or patient complaints regarding Dulude, concluding that "[t]hrough the exercise of reasonable care and diligence, Dulude should have discovered the nature of the defamation claim before April 17, 1995."  <u>Id.</u>

Dr. Lapinsky alleges that Dr. Neale defamed him beginning in early 1999.  He filed his claim against Neale in February 2007.  Under Vermont's three-year statute of

10

limitations, Dr. Lapinsky's claim is time-barred if, prior to 2002, he had discovered facts constituting the basis for a defamation claim, or facts existed that were sufficient to put a person of ordinary intelligence on inquiry which, if pursued, would lead to the discovery of such facts.  <u>Dulude</u>, 174 Vt. at 85.

Just as the plaintiff in <u>Dulude</u>, Dr. Lapinsky argues that although he was aware in 1999 that Dr. Neale was defaming him (SAC ¶¶ 12, 17), he had no way of discovering what were private communications. (SAC ¶ 16).  There is no indication, however, that Dr. Neale erected an "intervening screen" or other means to expressly prevent Dr. Lapinsky from learning about his statements.  In fact, Dr. Lapinsky knew in early 1999 that Dr. Neale was telling other people in the Vermont medical community that Dr. Lapinsky was (a) performing unnecessary surgery; (b) was unusually aggressive in performing surgeries; and/or (c) refused to accept on-call assignments. (SAC ¶ 12).

The only information Dr. Lapinsky lacked in 1999 was the list of individuals, other than Dr. Blowers, to whom Dr. Neale made these statements.  As addressed above, the identities of defamation recipients is not an essential

element of a Vermont defamation claim.  Moreover, even if such identities were required under Rule 8, this Court finds that Dr. Lapinsky was on inquiry notice in 1999 because he knew the substance of the allegedly defamatory statements, who made those statements and at least one person, Dr. Blowers, to whom they were made.  To the extent he felt that his claim was not fully apparent in 1999, the exercise of reasonable care and diligence would have led to his discovery of the true nature of his claim before the limitations period ran in 2002.

   This result comports with the primary purpose of a limitations period, fairness to a defendant. In re Estate of Peters, 171 Vt. 381, 387 (2000).  "[D]efendants ought to be secure in [their] reasonable expectation that the slate has been wiped clean of ancient obligations." Investment Properties, Inc. v. Lyttle, 169 Vt. 487, 492 (1999).  Although eight year-old statements are not "ancient obligations," "time limits represent a balance, affording the opportunity to plaintiffs to develop and present a claim while protecting the legitimate interests of defendants in timely assertion of that claim." Id.  Here, when Dr. Lapinsky was on at least inquiry notice of the basis of a

defamation claim against Dr. Neale in 1999, Dr. Neale should not be subject to suit five years after the period of limitations has run and eight years after he allegedly made the statements.

## Conclusion

For the reasons set forth above, I recommend that Dr. Neale's motions be granted.[2]

Dated at Burlington, in the District of Vermont, this 31st day of August, 2007.

/s/ Jerome J. Niedermeier
Jerome J. Niedermeier
United States Magistrate Judge

Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. Failure to file objections within the specified time waives the right to appeal the District Court's order. See Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).

---

[2] The Court need not address the Dr. Neale's laches argument.